**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

JAMES DARRELL QUALLS,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. 1:14-cv-00129
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Senior Judge Haynes
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CAROLYN W. COLVIN,⠀⠀⠀⠀⠀⠀)
Acting Commissioner of Social Security,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)

## M E M O R A N D U M

Plaintiff, James Darrell Qualls, filed this action under 42 U.S.C. § 405(g) against the

Defendant, Carolyn Colvin, Acting Commissioner of Social Security, seeking judicial review of the

Commissioner's denial of his applications for Disability Insurance Benefits ("DIB")[1] and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the Administrative Record (Docket

Entry No. 16), to which the Commissioner filed her response (Docket Entry No. 17). In his motion,

Plaintiff contends that the Administrative Law Judge ("ALJ") erred by (1) rejecting the medical

source statement of Plaintiff's treating physician and (2) relying on Plaintiff's failure to seek further

treatment for an adverse credibility finding. (Docket Entry No. 16-1 at 7-13). The Commissioner

argues that the ALJ's decision is supported by substantial evidence. (Docket Entry No. 17 at 3).

Plaintiff's applications for DIB and SSI benefits initially were denied on May 15, 2012 and

after reconsideration on September 24, 2012. (Docket Entry No. 11, Administrative Record, at 70-

---

[1]Plaintiff's insured status expired on September 30, 2010 and Plaintiff has an amended
alleged onset date of November 9, 2011. Thus, Plaintiff is not eligible for a DIB award.

73, 80-81).[2] Plaintiff filed a timely written request for a hearing before an ALJ and after a hearing

the ALJ denied Plaintiff's claim, based upon the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since November 19, 2011,[3] the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: anxiety and degenerative disc disease of lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently. He has the ability to sit, stand and walk for six hours each, in an eight-hour workday. He can occasionally stoop, crouch, kneel, crawl, climb and balance. He is limited to performing simple, repetitive work. Any changes in the work environment must be infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 27, 1962 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has an eleventh grade education and is able to communicate in

---

[2]The Court's citations are to the pagination in the Administrative Record, not in the electronic case filing system.

[3]Plaintiff's alleged onset date is November 9, 2011, not November 19, 2011. (Docket Entry No. 11 at 147).

English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 19, 2011,[4] through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Id. at 19-27. Plaintiff filed a request for review of the ALJ's decision with the Appeals Counsel that was denied. Id. at 1-3. The Appeals Counsel's denial rendered the ALJ's decision the Commissioner's final decision. Id. at 1.

## A. Review of the Record

Plaintiff is fifty-three years old, completed the eleventh grade, and has not obtained a general education diploma. Id. at 36. After initially alleging a disability onset date of June 1, 2005, Plaintiff amended his onset date to November 9, 2011. Id. at 147.

On November 9, 2011, Plaintiff had a motorcycle accident and was transferred to the Vanderbilt Medical Center Emergency Department from an outside hospital. Id. at 222. Plaintiff was uninsured when he was treated at Vanderbilt. Id. at 256. Plaintiff was very upset and gave conflicting information as to whether he lost consciousness after the crash. Id. at 222, 245. Plaintiff complained of right knee pain and severe back pain, and had abrasions on his nose, knees, and hands. Id. at 222.

---

[4]Plaintiff's alleged onset date is November 9, 2011, not November 19, 2011. (Docket Entry No. 11 at 147).

Plaintiff tested positive for methamphetamines, cannabis, opiods, OxyContin, and acetaminophen. Id. at 223, 245. Plaintiff admitted to using cocaine and cannabis but not alcohol or amphetamines. Id. at 245-46. Plaintiff denied taking drugs on the day of the accident, but admitted to drinking two beers during lunch that day. Id. at 245. Plaintiff also stated that he smoked two packs of cigarettes per day for thirty years. Id. at 246.

Imaging procedures revealed that Plaintiff had a 6.3 centimeter by 6.1 centimeter mass on his right kidney, and Dr. Maxwell Hill told Plaintiff to follow up with his primary care physician as soon as possible. Id. at 222, 226, 228. Dr. William Bacon considered this mass to represent renal cell carcinoma until proven otherwise. Id. at 226-29. Dr. Zachary Reardon explained to Plaintiff that there was a high probability that the kidney mass was malignant. Id. at 254. Plaintiff also had a T-12 anterior wedge fracture with a 10% loss of height and mild degenerative disc disease. Id. at 229, 257. Resident physician Jason Agran recommended Plaintiff use a quickdraw brace when out of bed or ambulatory, and stated that Plaintiff should follow up for repeat imaging in the spine clinic in six weeks. Id. at 230, 232. Dr. David Taber performed imaging procedures that revealed prior conditions of Osgood-Sclatter disease, mild right hip osteoarthitis, and bone fragments in the right ankle. Id. at 239, 243-44.

On November 23, 2011, Plaintiff visited Dr. Darrel Rinehart, stated that he had a broken back, and complained of right ankle and right knee pain. Id. at 365. Plaintiff reported no drug use, occasional beer drinking, and smoking every day. Id. On December 7, 2011, Plaintiff again visited Dr. Rinehart and complained of intermittent leg pain and cramping. Id. at 363. Plaintiff stated that the pain was associated with muscle weakness, and aggravated by exertion and lying flat. Id. Dr. Rinehart assessed Plaintiff with right knee pain and a kidney mass. Id. at 364. Dr. Rinehart noted that

4

initial films were negative for a right knee fracture, but Plaintiff's lack of insurance limited further diagnostic testing. Id.

On December 22, 2011, Plaintiff visited Dr. Rinehart complaining of sharp knee pain since his motorcycle accident, including swelling, warmth, stiffness, and decreased range of motion. Id. at 361. Dr. Rinehart assessed Plaintiff with right knee pain. Id. at 362. On December 29, 2011, Plaintiff visited Dr. Rinehart again with right knee complaints. Id. at 359. Dr. Rinehart assessed Plaintiff with anxiety in addition to leg pain. Id. at 360.

On January 4, 2012, Dr. Brice Boughner performed an MRI of Plaintiff's right knee at Maury Regional Hospital, finding an interstitial tear of the PCL, an MCL sprain of at least a grade 1, partial tearing of the posterior aspect of the medial patellar femoral ligament, partial tearing of the popliteus myotandinous junction, and suspected chronic meniscocapsular separation. Id. at 282, 372.

On January 9, 2012,[5] Plaintiff visited Dr. William Tissot of Franklin Urological Associates regarding his kidney mass. Id. at 285. On January 12 and 13, Dr. Tissot reviewed Plaintiff's records and CT scan from Vanderbilt. Id.

On January 18, 2012 Plaintiff visited Dr. Scott McCall at the Middle Tennessee Bone and Joint Clinic for a consultation and evaluation of Plaintiff's knee pain. Id. at 267. Plaintiff stated that he experienced right knee pain, swelling, and instability since his motorcycle accident. Id. Dr. McCall noted that Plaintiff was pleasant and cooperative. Id. Dr. McCall also noted that Plaintiff had an effusion and tenderness around the patella. Id. Dr. McCall reviewed Plaintiff's x-rays and MRI and made impressions of a right PCL tear, healed MCL tear, mild degenerative arthralgias, chronic

---

[5]This record is incorrectly dated January 9, 2011, instead of January 9, 2012. (Docket Entry No. 11 at 285).

narcotic dependence, and a kidney mass. Id. at 268. Dr. McCall opined that Plaintiff's right knee could be treated nonoperatively with a brace given his age and functional status. Id. Dr. McCall fit Plaintiff for a custom PCL brace and drained 30 cubic centimeters of fluid from Plaintiff's knee. Id. Dr. McCall recommended that Plaintiff follow up with him in 3-4 months if he were still having knee trouble, though Plaintiff would need a definitive diagnosis regarding his kidney condition prior to any orthopedic intervention. Id.

On January 23, 2012, Plaintiff visited Dr. Tissot, but declined a percutaneous biopsy, and expressed his desire to proceed with kidney removal surgery after being informed of the risks. Id. at 285.

On a January 25, 2012 disability report, Plaintiff described his inability to work as due to an ear condition, stage four kidney cancer, a thyroid mass, and back and knee pain. Id. at 152. That same day, Plaintiff visited Dr. Rinehart and repeated his right knee complaint. Id. at 349, 356. Dr. Rinehart assessed Plaintiff with lumbago, anxiety, and weakness. Id. at 350, 357.

On February 9, 2012, Dr. Tissot surgically removed Plaintiff's right kidney without any complications. Id. at 299-300. Plaintiff was discharged on February 11, 2012, and his final pathology reflected renal cell carcinoma. Id. at 306.

On February 27, 2012, Plaintiff's mother completed a pain questionnaire, stating that Plaintiff experienced extreme pain in his neck, back, and right knee that spread to his arms and feet beginning in 2005. Id. at 161-62, 164. She noted that Plaintiff had used hydrocodone, Percocet, Valium, and lidocaine pain patches every day since November 2011, but that the medications did not always relieve his pain. Id. at 161. She stated that Plaintiff used braces on his neck, back, and right knee to relieve his pain. Id. at 162. She also stated that Plaintiff would lose his balance if he moved or

6

stepped a certain way, and was inhibited in his ability to walk, sit, stand, lay down, sleep, lift, garden, ride an ATV, ride horses, camp, and fish. Id. She described Plaintiff's daily activities as sitting outside when it was nice and talking to family and friends. Id. She stated that Plaintiff's ear condition began in 1978 and caused dizziness and loss of hearing, and that Plaintiff took ear drops and antibiotics to treat infections when they occurred. Id. at 163.

On February 27, 2012, Plaintiff completed a function report and stated that he recently had his right kidney removed, he could not straighten his right knee because of torn muscles and ligaments, and he had broken bones in his neck and back. Id. at 165. Plaintiff also stated that he could not stand, sit, or lay down for any length of time. Id. Plaintiff checked boxes listing limitations in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, and climb stairs. Id. at 170. Plaintiff reported that he used crutches and braces for his knee, neck, and back. Id. at 171. Plaintiff stated that he could prepare simple meals, drive for very short trips, leave the house alone, and grocery shop with the help of a family member or friend. Id. at 167-68. Plaintiff also checked boxes listing that he could pay bills, count change, handle a savings account, and use a checkbook. Id. at 168. Plaintiff stated that he was "short tempered at times because of [his] pain and having to have help with things." Id. at 170.

On February 28, 2012, Plaintiff visited Dr. Rinehart and repeated his right knee complaint. Id. at 336. Dr. Rinehart assessed Plaintiff with lumbago, anxiety, and an unspecified diagnosis for which he prescribed Plaintiff Lortab. Id. at 338. On March 26, 2012, Plaintiff again visited Dr. Rinehart with the same complaints, and Dr. Rinehart assessed Plaintiff with lumbago and anxiety. Id. at 345-46.

On May 1, 2012, Dr. Norma Calway-Fagen performed a Psychiatric Review Technique as

part of Plaintiff's disability determination using some of Dr. Rinehart's treatment notes, Dr. McCall's treatment note, and Plaintiff's disability determination reports. Id. at 308, 320. Dr. Calway-Fagen concluded that Plaintiff's anxiety did not constitute a severe impairment. Id. Dr. Calway-Fagen stated that Plaintiff was mildly limited in activities of daily living and maintaining social functioning, but was not limited in maintaining concentration, persistence, or pace and did not have extended episodes of decompensation. Id. at 318. Dr. Calway-Fagen noted that Plaintiff's allegations were "generally credible" explaining that Plaintiff's anxiety diagnosis could reasonably cause symptoms of nervousness and depression. Id. at 320. Yet, Dr. Calway-Fagen classified Plaintiff's mental health issues as non-severe because of the physical nature of Plaintiff's cited daily limitations, Plaintiff's history without any mental health treatment, and Plaintiff's anxiety prescription for sixty days without a refill. Id.

On May 9, 2012, Dr. Kanika Chaudhuri completed a Medical Consultant Analysis and noted that the examination after Plaintiff's kidney removal surgery was unremarkable. Id. at 325.

On May 11, 2012, Dr. Chaudhuri completed a Physical Residual Functional Capacity ("RFC") Assessment using Plaintiff's medical records. Id. at 328, 334. Dr. Chaudhuri found that Plaintiff could: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour work day; and sit (with normal breaks) for about six hours in an eight-hour work day. Id. at 328. Dr. Chaudhuri also stated that Plaintiff had occasional limitations climbing, balancing, stooping, kneeling, crouching, and crawling. Id. at 329. Dr. Chaudhuri opined that Plaintiff's allegations were "partially credible" based on his medical records. Id. at 334.

On May 14, 2012, Ronnie Allsbrooks, a vocational examiner, completed a vocational

analysis and concluded that Plaintiff could lift a maximum of twenty pounds, or ten pounds frequently; could stand or walk for six hours per day; and could sit for six hours per day. Id. at 181. Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. Id. Allsbrooks' report does not reflect any mental limitations. Id. at 181-82. Allsbrooks found that Plaintiff could not perform past work as a hose cutter, but had the capacity to perform work including key cutter, cashier, and mail clerk. Id. at 182-83.

On May 15, 2012, the SSA denied Plaintiff's applications for DIB and SSI benefits. Id. at 70-73, 80-81.

On June 1, 2012, Plaintiff visited Dr. Rinehart and repeated his right knee complaint. Id. at 342. Plaintiff also stated that he "was not going to the bathroom like [he] should." Id. Dr. Rinehart assessed Plaintiff with lumbago and weakness. Id. at 343. On July 2, 2012, Plaintiff again visited Dr. Rinehart, repeated his right knee complaint, and Dr. Rinehart assessed Plaintiff with leg pain and insomnia. Id. at 340-41, 437-38.

On July 5, 2012, Plaintiff completed a disability report on appeal, stating that his condition deteriorated since January 2012 because of arthritis in his right knee, left kidney problems, forgetfulness, and worsening hearing, pain, and nerves. Id. at 188. Plaintiff also stated that he could not walk, sit, or stand for any length of time. Id. Plaintiff listed his medications as gabapentin, Klonopin, percocet, and hydrocodone with acetaminophen. Id. at 190.

On a July 21, 2012 function report, Plaintiff stated that he had pain in his leg, knee, and back, and was very forgetful. Id. at 194. Plaintiff also stated that his conditions kept him from sleeping, working, walking, sitting, and concentrating. Id. at 195. As to social activities, Plaintiff stated that

he sometimes talked with others and watched his nephew play ball at the park, but other times got irritated and aggravated. Id. at 198-99. Plaintiff checked boxes reflecting limitations in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use hands, and get along with others. Id. at 199. Plaintiff stated that he could lift ten to fifteen pounds with the aid of his knee and back brace, but would limp and sometimes fall. Id. Plaintiff wrote that he did not get along with authority figures very well, though he had not been fired or laid off from a job because of problems getting along with other people. Id. at 200. Plaintiff stated that he used a cane and brace. Id.

On August 2, 2012, Plaintiff visited Dr. Rinehart, repeated his right knee complaint, and Dr. Rinehart assessed Plaintiff with an unspecified diagnosis for which he prescribed Plaintiff Lortab. Id. at 435-36.

On August 9, 2012, Dr. Marvin Cohn reviewed Plaintiff's DIB and SSI claims as part of Plaintiff's reconsideration request. Id. at 377. Dr. Cohn assessed Plaintiff's medical records and affirmed Dr. Chaudhuri's physical RFC assessment of May 11, 2012. Id.

On August 28, 2012, Plaintiff visited Dr. Deborah Doineau for a psychological evaluation as part of the disability determination. Id. at 378. After reviewing Plaintiff's social security application, observing Plaintiff, and conducting a clinical interview, Dr. Doineau's diagnoses were: cognitive disorder, not otherwise specified; rule out dementia due to head injury; prior history of alcohol dependence reported to be in remission; rule out malingering; and hearing deficits, injury sustained in accident. Id. at 382. Dr. Doineau reported that Plaintiff had moderate limitations in understanding or remembering and adaptability, mild social limitations, and a mild limitation in sustaining concentration or pace. Id. Dr. Doineau also reported that Plaintiff was capable of

managing funds as long as he did not relapse on alcohol. Id. As to Plaintiff's interview, Dr. Doineau noted:

> It was odd that he did not seem to know the colors of the American flag or the shape of a ball. On the other hand, he was able to remember quite a bit of other information requested of him. In order to determine the extent of the claimant's memory problems, memory testing would be appropriate. The possibility of malingering should be kept in mind but certainly there was insufficient evidence to diagnose this claimant with malingering at this time.

Id. Dr. Doineau recommended that "[t]he reader of this report [] seek additional sources of information if available due to the lack of any longitudinal or other data." Id. at 378.

On September 4, 2012, Plaintiff visited Dr. Rinehart, repeated his right knee complaints, and Dr. Rinehart assessed Plaintiff with lumbago and anxiety. Id. at 433-34.

On September 18, 2012, examiner Jill Richardson completed a vocational analysis and reached the same conclusions as the May 2012 vocational analysis. Id. at 202-04. That same day, Dr. Jenaan Khaleeli completed a Psychiatric Review Technique and found that there was insufficient evidence to determine a medical disposition. Id. at 385. Dr. Khaleeli commented that Dr. Doineau's psychological evaluation could not be considered valid because Plaintiff "clearly" did not cooperate fully. Id. at 397.

On October 4, 2012, Plaintiff visited Dr. Rinehart and complained of insomnia as well as constant upper back pain over the past ten years that was stabbing and piercing. Id. at 431. Plaintiff stated that his pain was aggravated by exertion and weight lifting. Id. Dr. Rinehart assessed Plaintiff with lumbago and anxiety. Id. at 432.

On October 30, 2012, Plaintiff completed a disability report on reconsideration, stating that his condition had deteriorated since July 2012 because of worsening knee pain, back pain, memory,

and nerves. Id. at 205. Plaintiff stated that lack of medical insurance and money prevented him from keeping appointments with his kidney doctor, the Middle Tennessee Bone and Joint Clinic, a hearing specialist, and the pain clinic. Id. at 211.

On November 5, 2012, Plaintiff visited Dr. Rinehart and repeated his complaint of back pain. Id. at 429. Dr. Rinehart assessed Plaintiff with lumbago and anxiety. Id. at 430. On December 5, 2012, Plaintiff again visited Dr. Rinehart to follow up regarding his back pain and anxiety. Id. at 427. Plaintiff repeated his complaints regarding insomnia, right knee pain, and upper back pain. Id. Dr. Rinehart again assessed Plaintiff with lumbago and anxiety. Id. at 428. On January 2, 2013, Plaintiff visited Dr. Rinehart, repeated his back pain complaint, and stated that his insomnia came upon gradually two years prior and occurred nightly. Id. at 424. Dr. Rinehart again assessed Plaintiff with lumbago and anxiety. Id. at 425. On February 4, 2013, Plaintiff visited Dr. Rinehart and repeated his complaints regarding insomnia, right knee pain, and upper back pain. Id. at 422. Dr. Rinehart again assessed Plaintiff with lumbago and anxiety. Id. at 423. On March 4, 2013, Plaintiff visited Dr. Rinehart to follow up on back and knee pain, anxiety, and hypertension, and repeated his complaints regarding insomnia, right knee pain, and upper back pain. Id. at 419. Dr. Rinehart again assessed Plaintiff with lumbago and anxiety. Id. at 420.

In a March 13, 2013 medical source statement, Dr. Rinehart listed Plaintiff's diagnoses as chronic anxiety, chronic back pain, and insomnia. Id. at 410. Dr. Rinehart circled answers reflecting that Plaintiff could stand for fifteen minutes at one time and sixty minutes in a work day; could sit for fifteen minutes at one time and sixty minutes in a work day; could occasionally lift five pounds; could not lift any weight frequently; and could occasionally bend. Id. Dr. Rinehart also circled "none" in the category "hours patient can work per day." Id. Following the instruction "please

explain," Dr. Rinehart wrote "has [degenerative disc disease] of the lumbar spine." Id. Dr. Rinehart also found that Plaintiff was limited to occasional: fine and gross manipulation of his right hand; fine and gross manipulation of his left hand; and rasing his left and right arms over shoulder level. Id. Dr. Rinehart did not explain these limitations. Id.

Dr. Rinehart also circled answers reflecting that Plaintiff: could never work around dangerous equipment; could occasionally tolerate dust, smoke, or fume exposure; was not vision impaired; never needed to elevate his legs during an eight-hour workday; did not need to work in close proximity to bathroom facilities; and needed to take frequent unscheduled breaks during the day. Id. at 411. Dr. Rinehart opined that Plaintiff suffered from moderate to severe pain and again noted that Plaintiff had degenerative disc disease of the lumbar spine. Id. Dr. Rinehart circled "no" to the question "is there any evidence that this patient is malingering" and commented "with his [degenerative disc disease] of the lumbar spine as well as chronic anxiety and closed head injury, I do not believe [Plaintiff] can sustain any type of employment." Id.

As to Plaintiff's mental abilities, Dr. Rinehart circled "no" to the question "does your patient have psychiatric limitations" but found that Plaintiff had anxiety disorder for which Dr. Rinehart's treatment of Plaintiff consisted of "Klonopin 1 mg at bedtime." Id. at 412. Dr. Rinehart circled "yes" to the question "do you believe the severity of the above conditions would significantly contribute to the patient not being able to get, do, or keep a full time – 8 hour a day – 40 hour a week job." Id. at 413. Dr. Rinehart also circled answers reflecting that Plaintiff's "ability to do work related activity on a sustained basis – 8 hours a day – 5 days a week" was extremely impaired in the following areas: maintain attention for extended periods of two hour segments; maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work

in coordination with or proximity to others without being unduly distracted by them; complete a normal workday and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and be aware of normal hazards and take appropriate precautions. Id. Dr. Rinehart commented, "Since a severe closed head injury Nov. of 2010[6] [Plaintiff] has had difficulties with his cognitive functioning." Id. at 414.

On March 14, 2013, Plaintiff visited Dr. Rinehart to follow up on his anxiety, insomnia, and lumbago, and repeated his complaints regarding insomnia, right knee pain, and upper back pain. Id. at 417. Dr. Rinehart again assessed Plaintiff with anxiety. Id. at 418.

On March 21, 2013, at the hearing before the ALJ, Plaintiff testified that the number one problem keeping him from working was his right leg because he "tore it all up" in his motorcycle accident. Id. at 45. Plaintiff stated that if he stood on his right leg for long, he would "get to where I can't walk," and that his right leg sometimes didn't "walk with [him]" and caused him to fall, resulting in aches and bruises. Id. at 47. Plaintiff testified that he fell "two or three times a day," and often caught himself off balance. Id. at 52. Plaintiff stated that his knee was constantly swollen, but would swell up even more if he walked too much. Id. at 57. Plaintiff stated, "I'm supposed to be wearing a [knee] brace and all that, but I just don't have the money to buy this brace." Id. at 58. Plaintiff also testified that Dr. Rinehart wanted give him shots to treat his knee pain. Id. at 57.

Plaintiff testified that he also had back pain because he broke two back bones in his

---

[6]Plaintiff's motorcycle accident was in November 2011, not November 2010. Id. at 224.

motorcycle accident. Id. at 48. Plaintiff did not recall being told that he had degenerative disc disease, stating "that's one of my problems. . . . I cannot remember. That's, that's why I get so lost on a lot of this." Id. Plaintiff stated that he experienced back pain "three quarters of the time" and rated his pain at eight on a scale of ten. Id. Plaintiff stated that he took Lortab for his back pain. Id. at 49. As to his hearing difficulties, Plaintiff stated that a specialist could not fit him with a hearing aide. Id. at 44.

Plaintiff testified that he got along with people at his job as a machine operator, but that his mental condition changed after his motorcycle accident. Id. at 43, 50. Plaintiff testified that one of the deer horns broke off in his head, resulting in fluid on his brain. Id. at 46. Plaintiff stated that he did not remember anything after the accident "for a few weeks," and had continuing memory problems. Id. at 49-50. Plaintiff also stated that he had anger and frustration problems that were helped by taking Klonopin. Id. at 49, 51-52.

As to his kidney removal, Plaintiff testified that he did not have medical insurance or the money to follow up with the doctor who performed the surgery but that his mother paid for him to see Dr. Rinehart. Id. at 49-50, 55-56. Regarding work limitations, Plaintiff stated that he could not sit for one hour without changing positions and could walk from five to twenty minutes before taking a break depending on the day. Id. at 54. As to daily activities, Plaintiff testified that some days he fed his horse and dog, microwaved food, and did laundry, though he would sometimes "put a load of clothes in there and forget about them . . . ." Id. at 52, 55.

The ALJ asked vocational expert James Adams whether an individual of Plaintiff's age, education, work experience, and RFC level could perform any jobs that exist in the national economy. Id. at 61-63. Adams testified that Plaintiff could not perform his past relevant work as a

machine operator or roofer. Id. at 62-63. Adams stated, however, that Plaintiff could perform other jobs that exist in the national economy, such as cleaner, gate guard, and bagging salvage. Id. Adams also testified that, based on Dr. Rinehart's medical source statement, Plaintiff could not perform any jobs that exist in the national economy. Id.

## B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). A reviewing court's evaluation of the Commissioner's decision is based upon the entire record made from the administrative hearing process. Jones v. Sec'y, Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). Judicial review is limited to a determination of (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Plaintiff contends that the ALJ erred by: (1) improperly relying on the opinions of non-

16

examining State agency consultants and not considering properly the opinion of Plaintiff's treating physician as required by SSA regulations and decisional law; and (2) making an adverse credibility finding based on Plaintiff's failure to seek further treatment. (Docket Entry No. 16-1 at 7-13).

Plaintiff asserts that the ALJ's rejection of his treating physician's medical source statement in favor of the non-examining consultants was "not supported by the evidence" because Plaintiff's "treating physician is the only medical professional who has examined the claimant and who has provided an opinion based on such examination as to the claimant's residual functional capacity." Id. at 8.

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not assign the treating physician's opinion "controlling weight," the ALJ must still assign it appropriate weight based on a number of factors, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (internal citations omitted). The ALJ must also provide "good reasons" for discounting an opinion that are "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at 406-07 (internal quotations and citations omitted).

Here, Defendant does not dispute that Dr. Rinehart qualified as Plaintiff's treating physician.

17

Yet, the ALJ gave "little to no weight" to Dr. Rinehart's opinion of Plaintiff's physical ability to engage in work activity because Dr. Rinehart's opinion was "inconsistent with his own treatment notes and the longitudinal evidence of record." (Docket Entry No. 11 at 24). On his medical source statement, Dr. Rinehart circled "none" in the category of "hours patient can work per day," and found that Plaintiff could stand for fifteen minutes at one time and sixty minutes in a workday; could sit for fifteen minutes at one time and sixty minutes in a workday; could occasionally lift five pounds; could not lift any weight frequently; and could occasionally bend. Id. at 410. Dr. Rinehart also found that Plaintiff suffered from moderate to severe pain. Id. at 411. The only physical explanation for Dr. Rinehart's limitations was that Plaintiff suffered from degenerative disc disease. Id. at 410-11.

The ALJ found that Dr. Rinehart's opinion that Plaintiff's degenerative disc disease precluded him from engaging in work activity at any exertional level was based on Plaintiff's subjective complaints: "Dr. Rinehart failed to refer the claimant for testing or to a specialist, as might be expected for someone so seriously impaired. His only treatment was to prescribe Lortab." (Docket Entry No. 11 at 25). While Plaintiff is correct that "Vanderbilt records confirm the existence of a thoracic compression fracture and degenerative disc disease," (Docket Entry No. 16-1 at 9), his fracture had only a "10% loss of height" and his degenerative disc disease was "mild," (Docket Entry No. 11 at 229). Plaintiff is also correct that a January 2012 MRI revealed "multiple problems" with Plaintiff's right knee, (Docket Entry No. 16-1 at 9), but Dr. Rinehart does not cite knee problems as the explanation for Plaintiff's physical limitations on his medical source statement, (Docket Entry No. 11 at 410-11). Dr. McCall reviewed the MRI, examined Plaintiff, and found that "given [Plaintiff's] age and functional status" Plaintiff's knee issues could be treated "nonoperatively with a brace." Id. at 268.

18

The ALJ also found that Dr. Rinehart's medical source statement was inconsistent with his own notes. (Docket Entry No. 11 at 24-25). Dr. Rinehart "stated the claimant's pain was precipitated by exertion and lifting heavy weight, but yet Dr. Rinehart's statement precluded work at any level." Id. at 25. The ALJ also noted that Dr. Rinehart's medical source statement reflected extreme mental limitations despite "his treatment notes remark[ing] that the claimant's affect and mood were normal." Id. at 25. Plaintiff admits that there are some "inconsistent entries in the record" but argues that the inconsistencies result from Dr. Rinehart's difficulty "using the computer program that generates his electronic records" and are not sufficient to reject his opinion. (Docket Entry No. 16-1 at 8). Yet, as discussed above, these admitted inconsistencies were not the only deficiencies that the ALJ found in Dr. Rinehart's medical source statement. Thus, the Court concludes that substantial evidence supports the ALJ's decision to assign "little to no weight" to Dr. Rinehart's medical source statement as insufficiently supported and inconsistent with Plaintiff's medical record as a whole. See Blakley, 581 F.3d at 406.

By contrast, the ALJ gave "great weight" to the opinions of Dr. Kanika Chaudhuri, a non-examining State agency consultant, and Dr. Marvin Cohn, another non-examining State agency consultant who affirmed Dr. Chaudhuri's findings, because their opinions were "consistent with the longitudinal medical evidence." (Docket Entry No. 11 at 23-24). Dr. Chaudhuri found that Plaintiff could: lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for about six hours in an eight-hour work day; and sit (with normal breaks) for about six hours in an eight-hour work day. Id. at 328. Dr. Chaudhuri also stated that Plaintiff had occasional limitations climbing, balancing, stooping, kneeling, crouching, and crawling. Id. at 329.

The opinions of non-examining State agency consultants may be entitled to greater weight

than the opinions of treating sources in certain circumstances, such as "where the non-examining source's opinion 'is based on a review of a complete case record.'" Miller v. Comm'r of Soc. Sec., No. 15-1405, 2016 WL 362423, at *5 (6th Cir. 2016) (citing SSR 96-6p, 1996 WL 374180, at *3). Here, Dr. Chaudhuri reviewed Plaintiff's records from his alleged onset date through the date of Dr. Chaudhuri's assessment, including his: Vanderbilt records from his motorcycle accident, right knee MRI, consultations with a kidney specialist, treatment with Dr. McCall, treatment with Dr. Rinehart, follow-up with Dr. Rinehart following successful kidney removal surgery, and function report. (Docket Entry No. 11 at 334). In affirming Dr. Chaudhuri's findings on reconsideration, Dr. Cohn stated that he "reviewed all of the evidence" in Plaintiff's file, including Plaintiff's function report on appeal and Dr. Rinehart's treatment notes from the reconsideration period. Id. at 377.

Plaintiff argues that Dr. Chaudhuri's opinion is "actually more in the nature of hopeful expectations" because the report includes the note, "RFC projected by 12/31/12." (Docket Entry No. 16-1 at 9). Yet, because Plaintiff's alleged onset date was in November 2011, a projection to December 2012 was necessary to comply with the duration requirement that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" to qualify as a disability. 12 C.F.R. § 404.1509. Moreover, Plaintiff's treatment regimen did not change from May 2012 through December 2012, except that Dr. Rinehart prescribed Plaintiff gabapentin rather than Klonopin during the month of June. (See Docket Entry No. 11 at 341, 343). Because Doctors Chaudhuri and Cohn reviewed Plaintiff's complete case record and their opinions were consistent with the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision to afford their assessments "great weight."

Plaintiff next contends that the ALJ made an adverse credibility finding based on Plaintiff's

failure to seek additional treatment, and that such finding is unsupported by substantial evidence because the ALJ failed to consider that Plaintiff did not have "medical insurance coverage, nor did he have the funds to pay for treatment." (Docket Entry No. 16-1 at 12).

An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citing Villarreal v. Sec'y of Health and Human Serv. 818 F.2d 461, 463 (6th Cir. 1987)). When analyzing a claimant's subjective complaints, the ALJ must consider the following factors and how they relate to the evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. See Felisky v. Bowen, 35 F.3d 1027, 1039 (6th Cir. 1994) (construing 20 C.F.R. § 404.1529(c)(3)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony and the reasons must be supported by the record. See id. at 1036; King v. Heckler, 742 F.2d 968, 975 (6th Cir. 1984).

Citing SSR 96-7p, Plaintiff contends that "the ALJ may consider a failure to seek appropriate treatment in assessing whether a claimant's statements regarding symptoms are credible but only if 'there are no good reasons' for failure to seek treatment." (Docket Entry No. 16-1 at 12). It was not improper for the ALJ to consider Plaintiff's failure to seek further examination or treatment. See Strong v. Soc. Sec. Admin., 88 Fed.Appx. 841, 846 (6th Cir. 2004) (unpublished opinion) (citations omitted) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment."). The ALJ also

considered "other information in the case record." SSR 96-7p provides that an ALJ may draw adverse credibility inferences about a claimant's complaints if the medical records show that the claimant "is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p also states that an ALJ may not draw any inferences about a claimant's failure to seek medical treatment "without first considering any explanations that the individual may provide, or other information in the case record . . . ." (emphasis added). Further, failure to seek treatment for a mental condition "should not be a determinative factor in a credibility assessment." (Docket Entry No. 16-1 at 13 (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Here, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible . . . ." (Docket Entry No. 11 at 23, 25). In this credibility determination, the ALJ found that "the credibility of the claimant's allegations is weakened by inconsistencies between his allegations and the medical evidence of record." See SSR 96-7p; (Docket Entry No. 11 at 26). For example, Plaintiff testified that his right knee was the number one problem keeping him from working, but the ALJ notes that Plaintiff's treatment for this ailment was "conservative in nature" consisting of a prescription for Lortab. Id. at 20 (citing Dr. Rinehart's treatment records from July 2, 2012, August 2, 2012, and September 4, 2012). The ALJ also questioned Plaintiff's credibility based on his observation at the hearing of Plaintiff's "wide based, hobbling gait" despite the lack of any reference to an abnormal gait in Dr. Rinehart's treatment notes. Id. at 26.

As to Plaintiff's mental health condition, the ALJ noted not only that Plaintiff "failed to seek treatment from a licensed therapist or psychologist," but also that Klonopin helped alleviate Plaintiff's anxiety. (Docket Entry No. 11 at 24). The effect of medication is an appropriate factor in

analyzing the credibility of subjective complaints. See Felisky, 35 F.3d at 1039. The ALJ also found

that Plaintiff performed various activities of daily living:

> Since March 21, 2013,[7] [sic] the alleged onset date of disability, the claimant indicated he was able to attend to his personal care needs, watch television, prepare simple meals and shop in stores. He also indicated he spent time with others and went to the park to watch his nephew play ball.

(Docket Entry No. 11 at 25). Given these other considerations, the ALJ's opinion does not suggest

that he considered Plaintiff's failure to seek further treatment "a determinative factor" in his

credibility analysis. See Strong, 88 Fed.Appx. at846.

The ALJ determined that Plaintiff's anxiety was a severe impairment and accounted for

mental health limitations in Plaintiff's RFC by finding that Plaintiff is "limited to performing simple,

repetitive work" and that work environment changes must be "infrequent and gradually introduced."

(Docket Entry No. 11 at 19, 21). While the ALJ did not explicitly address Plaintiff's testimony that

he did not have the medical insurance or money necessary to seek further treatment for his knee pain,

back pain, and anxiety, "failure to pursue treatment because the claimant cannot afford it does not

preclude a finding of disability." Henry v. Comm'r of Soc. Sec., 973 F.Supp.2d 796, 803 (N.D. Ohio

2013). The ALJ assessed Plaintiff's medical records, observed Plaintiff during his hearing, and

reached a decision that is supported by substantial evidence. Thus, the Court concludes that the

ALJ's decision on Plaintiff's full credibility is supported by medical proof. See Walters, 127 F.3d

at 531.

For these reasons, the Court concludes that the ALJ's decision is supported by substantial

---

[7]Plaintiff's alleged onset date is November 9, 2011, not March 21, 2013. (Docket Entry No. 11 at 147).

evidence and should be affirmed and that Plaintiff's motion for judgment on the record (Docket Entry No. 16) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _3nd_ day of March, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge